John F. BEHNKE, to his own use and to the use of Hartford Accident and Indemnity Company, a body corporate of the State of Connecticut, Plaintiff,

v.

Courtney W. GEIB and Edith G. Geib, and Estate of Courtney W. Geib, deceased, Edith G. Geib, Administratrix of the Estate of Courtney W. Geib, deceased, Richard M. Matthews, Administrator of the Estate of Courtney W. Geib, deceased, and John Doe, Administrator of the Estate of Courtney W. Geib, deceased, Defendants.

Civ. A. No. 8643.

United States District Court
District of Maryland.

Jan. 2, 1959.

H. Ross Black, Jr., Baltimore, Md., for plaintiff.

Paul M. Higinbothom and Paul R. Kach, Baltimore, Md., for defendant Richard M. Matthews.

C. Ferdinand Sybert, Ellicott City, and David Kauffman, for A. P. McAllister, Register of Wills for Dorchester County.

R. DORSEY WATKINS, District Judge.

Plaintiff,[1] a nonresident of Maryland, brought suit in this court on the last day of the three-year period prescribed by statute as the period of limitations for actions on the case (Article 57, section 1 of the Code of Public General Laws of Maryland, 1957 Edition) to recover for personal injuries sustained as the result of a motor vehicle accident occurring in New Jersey and allegedly caused by the negligence of Courtney W. Geib. Although Courtney W. Geib died one month prior to the instituting of the action, he was named as a defendant as were among others,[2] the "Estate of Courtney W. Geib, deceased"; "Richard M. Matthews, Administrator of the Estate of Courtney W. Geib, deceased"; and "John Doe, Administrator of the Estate of Courtney W. Geib, deceased". The record indicates that Mr. Matthews, an attorney, upon being served with summons in the above entitled matter sent a copy of the complaint to the insurer of the decedent, to which counsel for the insurer responded by letter[3] to Mr. Matthews, in part, as follows:

"\* \* \* I have been informed by the Attorney General of the State of Maryland, representing the Register of Wills of Dorchester County, that as of today no Administrator or

---

1. The corporate use-plaintiff is the insurance carrier of the plaintiff's employer and recovery is sought on its behalf for workmen's compensation already paid to the individual plaintiff due to injuries arising out of the accident for which the individual plaintiff is herein asking damages.

2. Also named as a defendant was Edith G. Geib (widow of the decedent), both individually and as administratrix of the estate of the decedent.

3. Said letter appears in the record as part of plaintiff's exhibit 1.

other personal representative of the Estate of Courtney W. Geib has been appointed, nor have any letters been issued on said Estate.

"On behalf of the Globe Indemnity Company I hereby notify you that I am filing today in the U. S. District Court a copy of the enclosed Motion to Dismiss this case. The Globe Indemnity Company has taken this action with full reservation of all their rights under the terms and conditions of the policy issued to Courtney W. Geib."

The motion filed designated Mr. Matthews as the movant, the insurer's counsel as counsel for Mr. Matthews, and sought dismissal of the complaint and every count thereof as against the last three defendants named above; that is, the estate, Matthews as administrator, and John Doe as administrator. The ground for the motion was that as no suit can be filed against, or service obtained upon, the estate of a decedent as such but rather the filing and the service of process must await the appointment of a personal representative for the estate; since it appeared on the face of the complaint in the instant case that no such personal representative had been appointed, the complaint should be dismissed as to the said defendants.[4]

The complaint alleges that upon learning of Courtney W. Geib's death, the plaintiff through Richard M. Matthews made application to the Orphans' Court for Dorchester County and to the Register of Wills of that county for the granting of Letters of Administration to the said Richard M. Matthews on behalf of the plaintiff as a creditor of the Estate of Courtney W. Geib, whereupon the Register of Wills issued the notice required by statute (Article 93, section 36 of the Code of Public General Laws of Maryland, 1957 Edition) to defendant, Edith G. Geib,[5] advising her that letters would be granted to Mr. Matthews in the absence of objection, to which notice Mrs. Geib responded by objecting to Mr. Matthews' application and adding that it was her intention to apply for Letters of Administration but that she would do so at her convenience,[6] and as a consequence, the Orphans' Court not having acted to grant letters to anyone, the instant suit was brought against the defendants as heretofore named in an effort to prevent the running of the statute of limitations and consequent barring of the action.

At the hearing on the motion to dismiss, plaintiff offered in evidence certified copies of the original papers on file in the Orphans' Court[7] which show that approximately nineteen days after the present suit was instituted and two days prior to the filing of the motion to dismiss, the widow was informed that the Orphans' Court would in twenty days consider the application of Mr. Matthews for letters and that if she or someone in her behalf desired to administer the estate an application and bond should be

---

4. No similar motion has been filed on behalf of the decedent or on behalf of his widow in her individual or representative capacity.

5. As there was no surviving child, Mrs. Geib, the widow, was entitled as a matter of right to preference in the first instance in the granting of Letters of Administration (Article 93, section 23 of the Code of Public General Laws of Maryland, 1957 Edition).

6. A copy of the widow's letter certified by the Register of Wills and submitted as a part of plaintiff's exhibit 1 reads, in part: " * * * wish to advise

that I object to the granting of the application of Richard M. Matthews for Letters of Administration in the above estate; and that I will start proceedings at my convenience." Also, part of the plaintiff's exhibit 1 is a letter from Robert U. Geib, Jr., attorney at law and nephew of the widow, to Mr. Matthews stating, inter alia: " * * * my aunt has advised [the Register of Wills] that she objects to the granting of your application and shall herself make application for Letters of Administration at her convenience."

7. Comprising a portion of plaintiff's exhibit 1.

filed prior to that date. By telegram her objections, previously orally presented to the court, were reiterated "including the fact that the only personal property of the deceased consists of a nineteen fifty Buick sedan the average current blue book value of which is three hundred and thirty five dollars and which would be exempted by funeral expenses alone. At the present time the estate has no creditors whatsoever and it is urged that in the premises there is no reason for the court to exercise its discretion to grant Letters of Administration to anyone." At the appointed time which was approximately one month and one week after the institution of the instant suit, upon considering the application of Mr. Matthews, the Orphans' Court granted him Letters of Administration upon the estate of the decedent.

Although as a practical matter the problem of limitations lies behind the entire proceedings to date, the issue now before the court is not the applicable period of limitations nor when the period began to run nor whether the operation of the statute was suspended by the death of the alleged tortfeasor until the appointment of an administrator. Equally of no concern at the present stage of these proceedings is the validity of service [8] of process except to the extent that the validity of service is dependent upon, or relates to, the question of one's capacity to be sued. The sole issue at this point is whether or not at the time of the bringing of this suit the estate of the decedent or John Doe or Mr. Matthews, as administrators of said estate, were all, or any one of them, legally recognized entities capable of being sued.

"The word estate means, in the testamentary law, such property that passes, upon death, to the personal representative of the decedent." Gradman v. Brown, 1944, 183 Md. 634, 640, 39 A.2d 808, 811. "The estate of a deceased person is not an entity known to the law, and is not a natural or an artificial person, but is merely a name indicating the sum total of assets and liabilities of a decedent." 33 C.J.S. Executors and Administrators § 3 e., p. 881. Accordingly, the motion to dismiss the complaint as against the estate of Courtney W. Geib, deceased, is hereby granted.

"John Doe," originally the name of a fictitious plaintiff in an action of ejectment, is currently used to designate a party until his real name can be ascertained. 27 C.J.S. Doe, John, p. 1314 and pocket part. The court in the case of United States v. Doe, D.C.N.D.Cal. 1904, 127 F. 982 in discussing John Doe warrants and indictments points out that a warrant may be issued, and a defendant indicted, under a fictitious name provided the person to be arrested or indicted is otherwise so described as to be identifiable. Thus the complaint in the instant case can, as regards John Doe, be construed as a suit filed against the administrator of the estate of the decedent, said administrator not being named as an individual or in his individual capacity but being named in, and described by, his official or representative capacity. An administrator is an instrumentality established by law "for performing the acts necessary for the transfer of the effects left by the deceased to those who succeed to their ownership." 33 C.J.S. Executors and Administrators § 3 b, p. 880. An administrator is an artificial, not a natural person; an office; a legal entity capable of suing and being sued.[9] The artificial person whose powers are exercised by the natural person is recognized by the law as separate and distinct from said natural person.

If at the time of the filing of this suit an administrator had in fact been appointed, the court would have

8. Personal service was effected upon Mr. Matthews as administrator, while service upon the estate and John Doe, administrator, was attempted to be effected as to each by leaving a summons and a copy of the complaint with the Register of Wills for Dorchester County.

9. The statutory authorization for an administrator to sue or be sued appears in section 112 of Article 93 of the Code of Public General Laws of Maryland, 1957 Edition.

had little difficulty in concluding that there was in existence a being capable of being sued, that the designation of that being as "John Doe, Administrator of the Estate of Courtney W. Geib, deceased" sufficed to describe and identify said legal entity, and that, upon the plaintiff's ascertaining the name of the natural person duly authorized to exercise the power of the artificial person, an amendment to substitute his name for that of John Doe was proper and in no way constituted a substitution of a new sole defendant for an original sole defendant.[10] However, the problem now posed is more difficult and requires a consideration of whether or not the filing of a suit against an administrator of an estate must await the qualification and appointment of such an administrator. The court can find no authority for the proposition that by use of a fictitious name an instrumentality or artificial person not yet in existence may be made amenable to suit. Accordingly the motion to dismiss the complaint as against "John Doe, Administrator of the Estate of Courtney W. Geib, deceased" must be granted.

■ Turning to the last defendant herein involved, the facts show that suit was instituted against Mr. Matthews at a time when his application for Letters of Administration was pending before the Orphans' Court; that the appointment of an administrator was delayed, supposedly until the period of limitations [11] had run against the reinstitution of this suit, by objections posed by the widow of the decedent who being entitled to preference in the right to administer the estate announced her intention to apply for letters at her convenience; that Mrs. Geib did not apply for such letters; and that, thereafter, Mr. Matthews in fact was appointed administrator. If this case were to be decided by the balancing of equities, the court would have no trouble in reaching a conclusion favorable to its maintenance. However, the question for determination is Mr. Matthews' amenability to suit and the movant argues that until letters have actually been granted there is no person in being capable of suing or being sued [12] and that Mr. Matthews' subsequent appointment as administrator has no relevance to his capacity to be sued at the time this action was brought.

■ There is one statutory provision in the Code of the Public General Laws of Maryland, 1957 Edition, namely section 54 of Article 93, which is helpful to a decision. Although it expressly deals with the validity of the acts of an *executor*, not an *administrator*, before the grant of letters to him, the two terms are often used synonymously; the functions

---

10. See Rule 320 of the Maryland Rules of Procedure set out under "Pleading—General" of such rules and entitled "Amendment" providing:

"b. *As to Parties.*

"1. Misnomer—Misjoinder—Nonjoinder—Omission of Heir or Devisee. A writ or action shall not abate by reason of the misnomer of a party, or the nonjoinder or misjoinder of a party, or by the omission of an heir or devisee. In every such case the court shall allow such amendments as justice may require in order to effect a fair trial.

"2. Exception

"(a) Nonjoinder or Misjoinder.

"When an amendment is allowed for nonjoinder or misjoinder, some one of the original plaintiffs and some one of the original defendants must remain as parties to the action."

And see Smith v. Potomac Edison Company, D.C.Md.1958, 165 F.Supp. 681.

11. Again the court reiterates that the problem of limitations is not before it and it expresses no opinion relative thereto.

12. For language supporting movant's contention see: Smith v. Dennis, 1871, 33 Md. 442, 451:

"* * * there has been no person in being capable of suing since the termination of the last life estate under H. Conner's will, *until the grant of letters* to the lessor of the plaintiff," (emphasis supplied); quoted with approval in Rockwell v. Young, 1883, 60 Md. 563, 567; Bagby's Syllabus on Testamentary Law, p. 3: "Until a personal representative is appointed there is no one having legal title to personal assets and no one, therefore, *can sue or be sued* relative thereto." (Emphasis supplied.)

performed by, and the requirements imposed upon, *each are basically identical;*[13] and by statutory mandate whenever "the word administrator is used in this Code it shall include executor, and so vice versa, unless such an application of the term would be unreasonable." Article 1, Rules of Interpretation, section 5, Code of Public General Laws of Maryland, 1957 Edition. Article 93, section 54 provides, in part:

> " * * * but any act of an executor named in a will done before obtaining letters testamentary shall, in case he shall afterwards obtain such letters, be as valid and effectual as if the said act had been done after obtaining such letters; and in case of a suit commenced by such executor, it shall be sufficient to produce the said letters, or a certificate, under the seal of the office where they were obtained, that they have been granted to the party at any time before the trial or final hearing on such suit; and in any case whatever, where an exhibit of such letters testamentary or of administration would be good or available, a certificate as aforesaid shall also be good and available."

For the purpose of construing this statutory provision to determine whether or not it is reasonable to apply this section to the acts of a person not named in the will but who thereafter qualifies and is appointed administrator, the only possible contention occurring to the court as a ground for differentiating between an executor named in a will and an administrator is that from the time of the death of the decedent until letters are granted, the former, although not duly authorized to act, is potentially identifiable, while the latter is neither duly authorized to act nor identifiable. This is not a valid "distinction." While an executor is named in the will, an administrator may be just as clearly and definitely named by statute. (Sections 22–35 of Article 93, Code of Public General Laws of Md.,

1957 Edition, setting forth the order of right to administration). Under the facts in the instant case had the widow applied for letters, by statutory mandate the Orphans' Court would have been obligated to appoint her in the first instance as administratrix in the absence of any showing of legal disqualification (Art. 93, sec. 23, Code of Public General Laws of Maryland, 1957 Edition; Talbert v. Reeves, 1956, 211 Md. 275, 279, 127 A.2d 533). Thus as of the time of the death of the decedent her right to administer his estate was no more uncertain nor subject to defeat than her right to act would have been had she been named executrix in her husband's will. That she did not choose to exercise that right is not relevant to the one question now at issue, that is the reasonableness of construing section 54 of Article 93 as applying to administrators as well as executors named in a will, for executors as well as administrators may renounce, fail or be unable to serve. Just as a testator may name in his will two or more persons not as coexecutors but as substitutionary or successive executors, so an order of preference in the right to administer an intestate estate is set forth, not by a will but by statute, and in the instant case, upon those entitled to preference over him having failed to apply for letters, Mr. Matthews was appointed pursuant to the statute. He could, in effect, be considered a substitutionary or successive administrator by operation of the applicable statutes, for "upon the failure of those first entitled to administration to apply for letters, administration may be granted by the Orphans' Court to the largest creditor applying for same" and, furthermore, "the Orphans' Court has no discretion to appoint others". (Barton v. Tabler, 1944, 183 Md. 227, 231, 37 A.2d 266, 269; See also: Article 93, section 34, Code of Public General Laws of Maryland, 1957 Edition). The identity of Mr. Matthews, acting on behalf of allegedly the largest creditor of the estate, was as readily as-

---

13. For a full discussion of the similarities between the two offices see: Cephalis v. Briscoe, 1953, 202 Md. 419, 96 A.2d 602.

certainable as the identity of any substitutionary executor named in a will would have been. It is true that he was merely a potential personal representative of the decedent but this is equally true of any executor named in a will until he has duly qualified and has been granted his letters. (Cephalis v. Briscoe, 1953, 202 Md. 419, 427, 96 A.2d 602). The statute expressly recognizes this element of uncertainty when it states as a condition precedent to the retroactive validity its provisions give to the act of a potential executor that the section shall only apply "in case he shall afterwards obtain such letters." For the foregoing reasons the court concludes that it is not unreasonable to construe the words "executor named in a will" as including an administrator as named in order of preference by statute.

Thus the acceptance by Mr. Matthews, as administrator of the estate of Courtney W. Geib, deceased,[14] of a summons in the instant case filed against him in his capacity as such administrator was in the words of the statute an "act * * done before obtaining letters" and, such letters having afterwards been obtained by him, was "as valid and effectual [an act] as if the said act had been done after obtaining such letters". By acceptance is meant not only the physical act of accepting the papers but more importantly an unqualified mental acceptance of his amenability to suit in a representative capacity and submission thereto. The attempted disclaimer of validity of service of process or of the requisite representative capacity although filed in the name of Richard M. Matthews was, as previously pointed out in this opinion, in fact filed on behalf of the insurer of the decedent to protect the interests of the insurance company, and, accordingly, can in no way be interpreted as an attempt on the part of Mr. Matthews to repudiate the legal consequence of his act, that consequence being to make this suit one properly brought and no different from one which had been filed against a duly appointed administrator.

Even, however, in a situation where there had been no service and acceptance of process, no act on the part of the personal representative thereafter obtaining letters, other than bringing suit, such a representative's capacity to sue is expressly recognized and authorized by the statute. In "case of a suit commenced by such executor [personal representative], it shall be sufficient to produce the said letters, or a certificate, under the seal of the office where they were obtained, that they have been granted to the party at any time before the trial or final hearing on such suit" and this capacity to sue exists as of the time suit is brought just as any other act of a personal representative is given retroactive validity by the provisions of this section. What is expressly dealt with in one instance, the legal effectiveness of a suit brought by an individual thereafter attaining representative capacity, by strong implication makes the present suit against, rather than by, such an individual one properly and effectively instituted. In one respect in correlating capacity to sue to the capacity to·be sued (in the case of non-sovereign entities) it might be said that merely two sides of the same coin are involved. Establish the one and the other follows.

This, however, is not necessarily nor always true as was pointed out by then Chief Judge Cardozo of the Court of Appeals of New York in Carson v. Federal Reserve Bank of New York, 1930, 254 N.Y. 218, 172 N.E. 475, 70 A.L.R. 435. It becomes important therefore to define again or to restate the issue now before this court. It is not the capacity of a personal representative to sue or to be

14. The *summons* is so worded, as is the complaint; and paragraph 2 of the motion to dismiss alleges:

"That service of a subpoena [sic] to answer said Complaint was made upon your Movant, Richard M. Matthews as 'Administrator of the Estate of Courtney W. Geib, Deceased,' and it appears from the Complaint in this case, paragraph 2, thereof, that your Movant is not such Administrator."

sued, but is rather the want of representative capacity in the defendant at the time this suit was instituted. This court concludes that section 54 of Article 93 establishes retroactively the representative capacity of an individual thereafter obtaining letters. Such representative capacity having been established, the personal representative is equally empowered to sue or to be sued under the provisions of section 112 of Article 93, Code of Public General Laws of Maryland, 1957 Edition. Accordingly, the motion to dismiss the complaint as against Richard M. Matthews, administrator of the estate of Courtney W. Geib, deceased, is denied.

Should, however, the court to this point have misconceived the applicable law, the same result would ensue for different reasons. Although the suit was brought, and service of process had, against him in his representative capacity, the complaint is attacked upon the ground that it shows on its face that Mr. Matthews had no such representative capacity. The record indicates on the other hand that Mr. Matthews is now, and was appointed approximately one month after the instituting of this action, administrator of the estate of the decedent. His present amenability to suit is clearly set out by statute, subject to the qualifications of section 112 of Article 93. Consequently even if the court were to grant the motion to dismiss, it would so do with leave to the plaintiff to amend the complaint to allege that Mr. Matthews is, in fact, the duly appointed administrator of the estate in question and is being sued in such capacity. Heretofore, in this opinion, the court has looked to the law of Maryland as required by Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for the question before the court was the capacity of an individual acting in a representative capacity to be sued, but the propriety of granting a motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Leave to amend "shall be freely given when justice so requires" and whenever "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The cause of action asserted by the plaintiff in the instant case is one to recover for personal injuries sustained as the result of a motor vehicle accident allegedly caused by the negligence of the decedent. Whether Mr. Matthews is sued as a defendant in his individual or in his representative capacity, the cause of action remains the same. The Court of Appeals for the Fourth Circuit has had occasion more than once to announce the rule applied by the federal courts in regard to the effect of an amendment changing the capacity in which a *plaintiff* sues. There is no reason in principle why the same rule should not be applied in relation to the effect of an amendment changing the capacity in which a *defendant* is sued.

"＊ ＊ ＊ While the North Carolina holding is to the contrary (Bennett v. North Carolina R. Co., 159 N.C. 345, 74 S.E. 883), the clear weight of authority supports the rule, that 'an amendment changing capacity in which a plaintiff sues does not change the cause of action so as to let in the defense of limitations.' See exhaustive note on this subject in 74 A.L.R. pages 1269–1276. And this is the rule applied by the federal courts under R.S. § 954, 28 U.S.C.A. § 777; Missouri, K. & T. R. Co. v. Wulf, 226 U.S. 570, 576, 33 S.Ct. 135, 57 L.Ed. 355; McDonald v. State of Nebraska, 8 Cir., 101 F. 171; Leahy v. Haworth, 8 Cir., 141 F. 850, 4 L.R.A.,N.S., 657; Reardon v. Balaklala Consol. Copper Co., C.C., 193 F. 189, affirmed 9 Cir., 220 F. 584; Quaker City Cab Co. v. Fixter, 3 Cir., 4 F.2d 327; Weldon v. United States, 1 Cir., 65 F.2d 748; Keystone Coal & Coke Co. v. Fekete, 6 Cir., 232 F. 72, 73; Bixler v. Pennsylvania R. Co., D.C., 201 F. 553." Lopez v. United States, 1936, 82 F.2d 982, 987.

Nor does the fact that at the time that suit is filed there is a want of representative capacity in the plaintiff (or defendant) affect the relation back of the amendment provided that thereafter prior to the amendment such capacity is established. In United States v. Powell, 4 Cir., 1938, 93 F.2d 788, suit was instituted in 1932 on a war risk insurance policy; thereafter plaintiff qualified as administrator of other beneficiaries under the policy and in 1936 was allowed by the trial court to amend his complaint so as to sue in his representative capacity as such administrator. In affirming, the appellate court said:

> "When it was discovered that a part of the amount sued for was technically recoverable only by the administrators of the father and mother of the soldier, the trial judge properly allowed the plaintiff, who had qualified as their administrator, to be made a plaintiff in that capacity as well as in his capacity as administrator of the soldier. Lopez v. United States, 4 Cir., 82 F.2d 982, 987. As said in the case cited: 'The clear weight of authority supports the rule, that "an amendment changing capacity in which a plaintiff sues does not change the cause of action so as to let in the defense of limitations." ' " (United States v. Powell, 4 Cir., 1938, 93 F.2d at page 790).

See also: Smith v. Potomac Edison Company, D.C.Md.1958, 165 F.Supp. 681; Rejsenhoff v. Colonial Navigation Company, D.C.N.Y.1940, 35 F.Supp. 577, 579.

Thus, whether this court looks to and applies the substantive law of Maryland to determine the capacity of Mr. Matthews to be sued, or federal procedural law relative to the propriety and effect of an amendment, as a practical matter the end result remains the same and that is that this suit may be considered as having been instituted against Mr. Matthews, administrator of the estate of the decedent, as of the date that the complaint was filed. Accordingly, the motion to dismiss as to Mr. Matthews is denied.