# Federation of Salaried Unions v. Westinghouse

*Albert C. Shapira,* for plaintiffs.

*John G. Wayman, Leonard L. Scheinholtz* and *Reed, Smith, Shaw & McClay,* for defendant.

ELLENBOGEN, J., February 27, 1956.—This is an action in assumpsit. It is before the court en banc on preliminary objections ex parte defendant and on pre-

liminary objections to defendant's preliminary objections ex parte plaintiffs.

The complaint avers that the Federation of Westinghouse Independent Salaried Unions, hereinafter called the "Federation", a plaintiff, is an unincorporated labor association, that the New York Engineering and Service Salaried Employees, hereinafter called the "Association", a plaintiff, was the exclusive bargaining agent for all engineers in the Engineering and Service Department at the New York City office of the employer, excluding nonprofessional employes, clerks, stenographers, guards, watchmen and supervisors as defined in the National Labor Relations Act, that on or about November 1, 1950, the association through and in conjunction with its duly authorized agent, the federation, entered into a written collective bargaining contract with defendants, that on July 27, 1951, the association, acting through the federation as its agent, entered into a supplementary written collective bargaining contract, and that these contracts were in force at the time of filing of this suit on July 15, 1955.

The complaint further alleges that Walter E. Johnson and Joseph L. Doyaga, the individual plaintiffs, were employes of defendant corporation within the meaning of the supplementary collective bargaining agreement. They aver that they bring this complaint "for themselves and in behalf of all salaried employees of the Defendant included in the bargaining unit" of the association. Walter E. Johnson avers that he was directed to work at least 60 hours a week and that from September 3, 1951, to September 7, 1952, he worked 879 hours of overtime for which, under the collective bargaining agreement, he claims to be entitled to $2,797.22, toward which he has received only $175. He claims the difference of $2,047.22.

Plaintiff, Joseph L. Doyaga, similarly avers that beginning with the month of May 1952, and continuing through the month of May 1953, he was directed to work in excess of 40 hours per week, for which he asserts a claim for $2,603.78, under the collective bargaining agreement.

The first count of the complaint comprises the claim of Walter E. Johnson, the second count, that of Joseph L. Doyaga; the third and fourth counts are the claims of the federation and the association for nominal damages and for a declaratory judgment "interpreting" the collective bargaining agreement in harmony with the theory upon which the complaint is based.

With regard to the first and second counts, which are claims for compensation for overtime while on overseas assignment under the terms of the collective bargaining agreement as supplemented, defendant in its preliminary objections contends that such an action cannot be filed on behalf of others on overseas assignment because: (1) Other engineers were on such assignments "for different periods of time and under different circumstances"; (2) some engineers on overseas assignment "were members of the plaintiff unions, while others were borrowed from various regional offices of defendant" and merely passed through the New York City office on their way to their overseas assignment; (3) "there is no common question of law or fact with respect to any alleged liability which the defendant may owe to any of the said engineers on overseas assignment and the liability of the defendant to these engineers . . . if any, will depend on the factual situation of each individual case"; (4) the averments of the complaint do not present a proper case for a class action within the meaning of Pa. R. C. P. 2230 (a), and (5) the named individual plaintiffs do not adequately represent the interest of other engineers on overseas assignment.

With respect to the third and fourth counts, defendant filed a demurrer alleging that the complaint does not set forth a violation of the contract between plaintiff unions and defendant, and it fails to state a cause of action.

Defendant also filed a motion to strike counts three and four which seek a declaratory judgment, as not being in conformity with the procedure described for a declaratory judgment in the Act of May 22, 1935, P. L. 228, sec. 1, 12 PS §847.

Plaintiffs filed a demurrer to defendant's preliminary objections.

We shall first discuss the question whether plaintiffs are properly joined, and whether they may maintain this action on behalf of themselves and other employes of defendant who are similarly situated and included in the collective bargaining agreement.

Section 2230 (a) of the Pennsylvania Rules of Civil Procedure, dealing with class actions, provides as follows:

"(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto."

It will be noted that the term "class action" is not defined.

The Federal Rules of Civil Procedure define three types of class actions. A "true class action" is defined as one in which the right enforced "is joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it": Fed. R. C. P. 23 (a) (1). An example of such a true class action is a taxpayers action, or a suit by the bene-

ficiary of a trust against a trustee or by beneficiaries to preserve the trust fund. In true class actions, the right or liability asserted is common to all members of plaintiff or defendant class: 4 Anderson Pa. Civ. Pract. 346.

A "hybrid class action" is defined in the Federal rules as one in which the right asserted is "several, and the object of the action is the adjudication of claims which do not or may not affect specific property involved in the action": Fed. R. C. P. 23(a)(2). An example is a proceeding by a creditor to have a receiver appointed for a corporate debtor.

The third class action under the Federal rules is the "spurious class action" which is defined as an action in which the rights involved are "several, and there is a common question of law or fact affecting the several rights and a common relief is sought": Fed. R. C. P. 23(a)(3). Examples are, an action by the holders of bonds or notes against the trustee under the bond or note agreement [York v. Guaranty Trust Co. of New York, 143 F. 2d 503 (C. C. A. 2d 1944)], and an action by individual purchasers of stock to recover purchase money paid under fraudulent misrepresentation: Independence Shares Corp. v. Deckert, 108 F. 2d 51 (C. C. A. 3rd 1939).

A spurious class action is in effect a permission to persons who could have joined as plaintiffs by virtue of the permissive joinder of parties rule to group together and sue as a class and a like permission to join as defendant: Anderson, Pa. Civ. Pract. vol. 4, p. 348.[1]

---

[1] "The right to maintain a 'spurious' class action has thus the same effect as though the permissive joinder of parties rule had stated that plaintiffs or defendants could join when their rights or liabilities arose from a common factual background and a common question was presented but that, if the total number of plaintiffs or defendants was too great, some of the plaintiffs or defendants could sue or be sued on behalf of all": Anderson, Pa. Civ. Pract., vol. 4, p. 348.

For persons to be considered as a class there must be a substantial identity of rights and liabilities. If there is a basic dissimilarity the group ceases to be a class, although mere differences as to the amount of the claims, or the period covered by the claims are not significant: Oppenheimer v. F. J. Young & Co., 144 F. 2d 387 (C. C. A. 2d 1944).[2]

Plaintiffs do not contend that the case before us is a true class action, or a hybrid class action, but that it is a spurious class action. They contend that it is also permitted by Pa. R. C. P. 2229 (a):

"Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action."

Unless there are weighty reasons against it, it is in the interest of justice to permit plaintiffs to join

---

[2] "To require an absolute identity or equality of all the rights or liabilities would impose a condition which, in all probability, could never be satisfied and which would nullify the right to maintain a spurious class action": Anderson, Pa. Civ. Pract., vol. 4, rule 2230, p. 349.

The Oppenheimer case was instituted as a spurious class action by plaintiffs on behalf of holders of bonds to recover a loss allegedly suffered by the bondholders as a result of a conspiracy to defraud. In reversing the District Court of the United States for the Southern District of New York, which dismissed the suit as an improper class action, the court, speaking through Augustus N. Hand, said, at page 390: "There can be no doubt that claimants who become parties to this class suit would, if successful, be entitled to a different measure of damages. But if we were to read into the rule a requirement that each bondholder must recover damages at the same rate as seems to have been done by the Circuit Court of Appeals of the Eighth Circuit in Farmers Co-Op. Oil Co. v. Socony-Vacuum Oil Co., 133 F. 2d 101, 105, there would be few situations to which the action would apply."

in this action those engineers who are covered by the same collective bargaining agreement, and who worked overtime while on overseas assignment. Such a joinder would prevent a multiplicity of suits. It is an economical method to dispose of the claims of the large number of persons who are involved.

Such a ruling does not prejudice defendant. This being a spurious class action, the decision of the case will bind only the parties to the suit, viz., the original parties and those who will be added as parties before trial: Oppenheimer v. F. J. Young & Co., 144 F. 2d 387 (C. C. A. 2d 1944). Here as in that case, p. 390: "Inasmuch as persons who do not become parties cannot be affected by the decision, we need not go further as to the adequacy of plaintiffs' representation of others in the class. A stricter rule as to the adequacy of representation ought to obtain where the judgment is held binding on members of a class who do not intervene. Weeks v. Bareco Oil Co., Seventh Cir., 125 F. 2d 84."

In effect, this spurious class action accomplishes no more than an order by the pretrial judge which consolidates a number of cases for trial. Such order would, under Pa. R. C. P. 213($a$), be proper under the facts here present. Of course, only such individual plaintiffs may be joined in this action who (a) are covered by the same collective bargaining agreement, as supplemented, and (b) who are thus entitled to be compensated for overtime while on overseas service. Defendant's objection that there may be "unnamed members of this class who do not meet these requirements" is not well taken. If they do not meet the basic conditions here laid down, they cannot be joined as parties to this action. We cannot preliminarily decide at this stage of the case that such is the situation here present: McMenamin v. PTC, 55 D. & C. 557 (1946), and Pentland v. Dravo Corp., 152 F. 2d 851 (1945).

Defendant's view that "monetary damages cannot be recovered by the plaintiffs for absent members of the class", and that defendant is entitled to "know the names of the engineers for whom plaintiffs are suing and the amount owing to each and how that amount is arrived at" does not differ from the viewpoint and the theory of plaintiffs. Plaintiffs in their brief specifically state that only such additional plaintiffs will be considered and allowed to recover as will individually appear and as will serve their complaint on defendant.

The sum and substance of plaintiffs' position is that this suit is brought on behalf of the federation and association and two individual plaintiffs and those individual plaintiffs who may later join and file specific complaints. The rule permit such a joinder. Defendant's position, as we understand it, is not really opposed to such joinder in view of the fact that every individual plaintiff will be required to file an individual claim, properly sworn to, and serve the same on defendant some time before trial.

To guide the parties, we repeat that only such individual plaintiffs may be allowed to join who (a) are covered by the same collective bargaining agreement, as supplemented, (b) who served overseas and (c) are entitled to be compensated for overtime while overseas under the collective bargaining agreement as supplemented.

The question whether the federation and the association may maintain this action and recover nominal damages is one which has not been definitely decided in this State. A recent case dealing with the right of the union to sue the employer for a breach of the collective bargaining agreement with respect to payment of wages is Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 210 F. 2d 623 (1954).

When the Westinghouse case was appealed to the Supreme Court of the United States, that court, by a six to two vote, affirmed the holding of the Third Circuit that section 301 of the Taft-Hartley Act did not confer jurisdiction *on the Federal courts* to entertain a suit for wages allegedly due to employes under a collective bargaining contract: Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 348 U. S. 437 (1955). However, Justice Frankfurter, speaking for the majority, expressed the view that a sound social policy requires that a union be recognized as having the right to sue for breaches of a collective bargaining contract where the breach pertains to individual rights of members. Recognition of the union's right to sue in such circumstances promotes a greater sense of responsibility within the union and serves to discourage strike. We believe that this is a sound position and will follow it here.

An action for a declaratory judgment must be in the nature of a petition as provided for in the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as supplemented by the Act of May 22, 1935, P. L. 228, sec. 1, 12 PS §847. The motion to strike the prayer for a declaratory judgment will therefore be sustained.

### Order

And now, to wit, February 27, 1956, after argument and consideration the preliminary objections filed ex parte defendant are dismissed. The motion to strike the request for declaratory judgment is sustained; plaintiffs' preliminary objections to defendant's preliminary objections are sustained. It is further ordered that any individuals who desire to join as parties plaintiff must be joined, and file their individual claims, properly sworn to, not later than 60 days before the date set for trial.